IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TOBY DYE, on behalf of himself           )
and others similarly situated,           )
                                         )
                 Plaintiff,              )
                                         )
vs.                                      )       Case No. 23-cv-1329-DWD
                                         )
KNIGHT HAWK HOLDINGS, LLC,               )
*Et al.*,                                )
                                         )
                 Defendant.              )

<u>MEMORANDUM AND ORDER</u>

**DUGAN, District Judge:**

Plaintiff Toby Dye, on behalf of himself and others similarly situated, brings this complaint against Defendants Knight Hawk Coal, LLC, Knight Hawk Holdings, LLC, and ICG Illinois, LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). The Amended Complaint (Doc. 43) seeks to bring the FLSA claim as a collective action under 29 U.S.C. § 216(b), and the Illinois-law claims as a class action under Fed. R. Civ. P. 23.

Now before the Court is Plaintiff's Motion for Conditional Certification as to the proposed FLSA class (Doc. 43). Defendant has filed a Response in Opposition (Doc. 49), and Plaintiff has filed a Reply (Doc. 50). Having considered the briefing and arguments, and for the reasons set forth below, the Court will grant the Motion for Conditional Certification.

## I. BACKGROUND

The FLSA prohibits employers from requiring an employee to work more than forty hours in a workweek unless the employee receives compensation of at least one-and-a-half times their regular rate. 29 U.S.C. § 207(a)(1). For violations of this provision, the FLSA authorizes collective actions by employees on behalf of themselves and other employees who are "similarly situated." 29 U.S.C. § 216(b).[1]

According to the Amended Complaint, Defendants jointly own and operate underground coal mines in Illinois. Plaintiff claims Defendants jointly employed Plaintiff, the Opt-In Plaintiffs, and other employees as hourly non-exempt workers (collectively, "coal mining employees") at their underground coal mines. The coal mining employees are required to don safety and protective clothing every workday before their shifts start, before reporting to daily shift meetings, and before going into the coal mines. They are also required to obtain the tools and equipment which are required for them to perform their daily job duties before reporting to daily shift meetings and before going into the mine. Then, once their shifts are completed, the coal mining employees are required to clock out before doffing their safety and protective clothing and before putting away their tools and equipment. The underground coal mining employees, however, are not paid

---

[1] Although Plaintiff has raised claims under the FLSA and the Illinois Minimum Wage Law, his request for collective action is based on the FLSA. Collective actions under the FLSA differ from those under Fed. R. Civ. P. 23 in that the FLSA requires class members to "opt in," whereas Rule 23 putative class members must choose to "opt-out." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013). Because the instant motion seeks conditional certification for a collective action under the FLSA, rather than certification of a class under Rule 23, the Court limits its analysis to that claim for purposes of this Order.

for the time they spend donning and doffing their safety and protective clothing before and after their scheduled shifts. In addition, they are not paid for the time they spend gathering and putting away their tools and equipment before and after their scheduled shifts.

Plaintiff claims the amount of time coal mining employees spent performing unpaid work was 15 or more minutes each workday, resulting in approximately 1 hour and 25 minutes or more of unpaid overtime for each employee every week and approximately 65 hours or more of unpaid overtime per year.

Plaintiff requests that this Court conditionally certify a collective action, defining the potential class as:

> **All current and former hourly employees of Defendants engaged in underground mining in Illinois at any time during the three (3) years preceding the date of the filing of this Action to the present and worked more than forty (40) hours in at least one workweek**

(Doc. 43, p. 12).

## II. STANDARD OF REVIEW

The Seventh Circuit has not identified a specific standard for certifying a collective action under the FLSA.  Instead, district courts have "wide discretion" in determining how these suits should proceed.  *Weil v. Metal Techs., Inc.*, 925 F.3d 352, 357 (7th Cir. 2019).  In exercising its discretion, the district courts must "respect judicial neutrality and avoid even the appearance of endorsing the action's merits."  *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1046 (7th Cir. 2020).  District courts in this Circuit generally have gravitated toward utilizing the *Lusardi* two-step framework in determining whether a group of "similarly

situated" individuals in fact exists such that collective action should be certified. *Lusardi v. Xerox Corp.* 99 F.R.D. 89 (D.N.J. 1983) *See Owens v. GLH Cap. Enter., Inc.,* No. 3:16-CV-1109-NJR-SCW, 2017 WL 2985600, at *1 (S.D. Ill. July 13, 2017) (citing *Jirak v. Abbott Lab'ys, Inc.,* 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases)); *Dennis v. Greatland Home Health Servs., Inc.,* 438 F. Supp. 3d 898, 899 (N.D. Ill. 2020); *Woods v. Club Cabaret, Inc.,* 140 F. Supp. 3d 775, 780 (C.D. Ill. 2015).

In the first step, i.e. "conditional certification", a court must determine whether the plaintiff and members of the proposed class are similarly situated enough to allow notice to be sent to prospective plaintiffs. *Heckler v. DK Funding, LLC,* 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007). Conditional certification typically occurs where the parties have engaged in only minimal discovery. *See Mielke v. Laidlaw Transit, Inc.,* 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).[2] Essentially, a conditional certification contemplates the notice and questionnaire to be sent to putative plaintiffs as discovery device to determine whether a group of "similarly situated" individuals in fact exists. Therefore, at this early stage, courts apply a more lenient "minimal showing" or "modest factual showing" standard to determine whether the class is similarly situated. *Dennis,* 438 F. Supp. 3d at 899 (citing *Jirak,* 566 F. Supp. 2d at 847; *Mielke,* 313 F. Supp. 2d at 762); *see also Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (referring to this standard as a "modest

---

[2] In the instant case, Plaintiff's Motion for Conditional Certification was filed prior to the completion of any written discovery. (Doc. 53). Thereafter, the case was stayed pending mediation. On May 23, 2024, after mediation efforts were unsuccessful, the stay was lifted. (Doc. 57).

factual showing"); *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005).

The modest factual showing is a lenient burden of proof and is often based only upon the pleadings and any affidavits submitted by the parties." *Beeson v. C-Cat, Inc.*, No. 120CV00252JPHMPB, 2020 WL 7425339, at *2 (S.D. Ind. Dec. 18, 2020), at *2 (citation and internal quotation marks omitted); *see also Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (Plaintiff must provide "some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common [unlawful] policy" (internal citation omitted)). The Court does not, however, "make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Id.* (quoting *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016)). A factual nexus that binds potential members of a collective action together is sufficient to meet this burden. *Gambo*, 2005 WL 3542485, at *4. If the employees are found to be similarly situated, class members are given notice of the suit and an opportunity to opt-in. *Flores*, 289 F. Supp. 2d at 1045.

The second step of certification occurs after substantial discovery is complete, at which time the party opposing collective action typically moves to decertify the class. *Mielke*, 313 F. Supp. 2d at 762. At this stage, the Court makes a more stringent, factual determination as to whether the members of the class are similarly situated. *Id.* (citing *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

Before turning to the Discussion, a slight but possibly telling detour might be worthwhile. While district courts have been seemingly "following the crowd" to the "modest factual showing" approach to notions of "conditional certification" — a term that does not appear within the FSLA — two Circuit Courts have recently addressed the *Lusardi* practice and have instructed their inferior courts to abandon it. The Fifth Circuit indicated that "district courts must rigorously scrutinize the realm of "similarly situated" workers, and must do so from the outset of the case, not after a lenient, step one "conditional certification" because "[w]e cannot read the statute as supporting any of the certification tests that district courts have created." *Swales v. KLLM Transp. Servs., L.L.C.,* 985 F.3d 430, 441 (5th Cir. 2021). It went on to direct district courts to first "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." *Id.* And then courts should authorize preliminary discovery to address the particular issues and assess the scope and amount of discovery necessary to determine whether a group of employees is "similarly situated." *Id.*

More recently, the Sixth Circuit has also dispensed with the use of *Lusardi*'s "modest factual showing" approach to collective action certification. It determined the plaintiffs must instead show a "strong likelihood" that the employees at issue are similarly situated to the plaintiffs themselves. That standard is obviously more stringent and "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Clark v. A&L Homecare & Training Ctr., LLC,* 68 F.4th 1003, 1011 (6th Cir. 2023). The Court noted that the "strong-

6

likelihood" standard is familiar to the district courts in that it is regularly utilized in injunction practice. *Id.* Specifically, this standard "would confine the issuance of court-approved notice, to the extent practicable, to employees who are in fact similarly situated; and it would strike the same balance that courts have long struck in analogous circumstances." *Id.* Not entirely unlike the Fifth Circuit's reasoning in *Swales*, the Sixth Circuit pointed to the lack of statutory support for "conditional certification" and the minimal proof necessary under the "modest showing" standard. Speaking to the inherent problem that naturally attends employing a passive standard for certification, it stated: "We therefore disagree that a district court can or should determine—in absentia—whether other employees are "actually" similarly situated to the original plaintiffs." *Id.* at 1010.

While the Court will respectfully succumb to what appears to be our Circuit's tacit approval of the use of the generally accepted "conditional certification" approach, it is conceivable an argument exists that, if valid, would prevent certification here based upon the information and evidence it has before it.

### III. DISCUSSION

Plaintiff argues that Defendants maintained a common policy toward all hourly coal mining employees, according to which those workers were required to don and doff safety and protective clothing and gather the tools and equipment required to perform their daily work duties without pay. Plaintiff further states that the described unpaid time lasted approximately 15 minutes *or more* each workday. As a result, Plaintiff claims he, and others like him, routinely worked more than 40 hours per week without the requisite

7

overtime compensation. Plaintiff says these allegations, supported by 12 declarations (Doc. 43-1), satisfy his "modest burden" that he and others like him were subject to a common FLSA-violating policy or practice obligation to make a "modest factual showing" that he and others like her were subject to a common FLSA-violating policy or practice.

Defendants oppose certification, arguing that Plaintiff cannot obtain conditional certification for the purported collective class because (1) Plaintiff cannot establish that Defendants are a joint employer; (2) the purported opt-in Plaintiffs are not "similarly situated" because they work in different mines and are subject to different time-keeping procedures; and (3) the time at issue is not compensable under the "*de minimis*" exception to the FLSA.[3]

Upon review of the record, the undersigned concludes that Plaintiff has satisfied his step one burden. Plaintiff has provided the Court with twelve declarations supporting his claims that other similarly situated coal mining employees were subject to the same compensation policy, and that the subject policy violated the law.[4] (Doc. 43-1). Thus, Plaintiff has made a "modest factual showing sufficient to demonstrate that [Plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated

---

[3] Defendants also state that, if conditional certification is granted, they are opposed to Plaintiff's request for certification via text message. (Doc. 49). In response, Plaintiff has withdrawn his request for certification via text message. (Doc. 50).

[4] Defendants contend that Plaintiff's FLSA claim is not compensable because the alleged unpaid time was *de minimis*. However, as is discussed more fully below, the Court is not convinced that the authority on which Defendants rely establishes that 15 minutes or more (or even 10-15 minutes as originally alleged) of unpaid overtime is *de minimis* as a matter of law. As such, the Court finds that this merit-based argument does not defeat conditional certification and is more appropriately addressed at a later stage of this litigation.

the law." *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021). Moreover, as is set forth more fully below, the Court finds that, considering the early stage of the litigation, the largely merit-based arguments raised by Defendants do not case doubt on the claim that the proposed class members are similarly situated and do not provide a basis for denying conditional certification.

### A. Joint Employer

Defendants contend that conditional class certification should be denied because Plaintiffs have failed to establish the separate defendants are joint employers. In the Seventh Circuit, "for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." *Moldenhauer v. TazewellPekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). Whether individual employers are joint employers is a fact-intensive, merits-based inquiry. As a result, the question of whether individual defendants are, in fact, joint employers is typically addressed at the decertification or summary judgment stage. *See e.g., Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 855 (N.D. Ill. 2017) (declining to resolve the joint employer question at the conditional certification stage given "the factual issues involved" and because the question is better addressed at the decertification or summary judgment stage); *Lamarr v. Illinois Bell Tel. Co.*, No. 15 C 8660, 2017 WL 2264348, at *2 (N.D. Ill. May 24, 2017) ("The joint employer determination is a determination that involves a consideration of matters outside the pleadings and is premature at this juncture."); *Watson v. Jimmy John's, LLC*, No. 15 C 6010, 2015 WL 8521293, at *3 (N.D. Ill. Nov. 30,

2015) (the joint-employer issue is a merits issue that is best addressed after conditional certification and class discovery to "shed light on whether the policies plaintiff challenges are mandated by [the franchisor or franchisees].").

Plaintiff and each of the purported Opt-in Plaintiffs worked at Viper Mine, Prairie Eagle Mine, or both. (Doc. 43-1). Defendants allege that Knight Hawk Coal owns and operates Prairie Eagle coal mine and ICG Illinois, LLC owns and operates the Viper coal mine. (Doc. 49). Defendants further allege that Knight Hawk coal, LLC and ICG Illinois, LLC are separate limited liability companies with separate operations and employees, and that Knight Hawk Holdings, LLC is merely a holding company with no employees. (Doc. 49).

According to the Amended Complaint (Doc. 33) Knight Hawk Holdings, LLC is listed as the "managers" of Knight Hawk Coal, LLC and ICG Illinois, LLC. (Doc. 33, ¶ 24). Additionally, the declarations provided by the opt-in plaintiffs indicate that (1) Viper mine was purchased by Defendants in approximately 2020, and has been owned and operated by Defendants since that time; (2) signage at the Viper mine identifies the mine as a "Knight Hawk" mine; (3) a Knight Hawk employee handles the human resources and payroll for the Viper mine; and (4) it is common for Defendants' underground coal mining employees to work at both Viper and Prairie Eagle mines. (Doc. 43-1). Despite Defendants' arguments to the contrary, these allegations are sufficient to permit the court to authorize notice to potential opt-in plaintiffs. The Court can revisit the joint employer question at the decertification or summary judgment stage.

### B. Different Mines and Time-Keeping Procedures

Defendants contend that the purported opt-in Plaintiffs are not "similarly situated" because they work in different mines and are subject to different time-keeping procedures.[5] But "[W]hether ... discrepancies [between potential class members] will become important down the road does not affect the current question of conditional certification." *Salmans v. Byron Udell & Assocs.*, No. 12 C 3452, 2013 WL 707992, at *4 (N.D. Ill. Feb. 26, 2013) (citing *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 751 (N.D. Ill. 2010)). At this stage, the question before the Court is whether Plaintiff has shown that he and the potential collective members were "victims of a common policy or plan that violated the law." *Salmans*, 2013 WL 707992, at *2. Plaintiff does "not need to show that other potential class members worked under *identical* circumstances, but only that their circumstances were similar." *Id.* at *4 (emphasis in original). *See also Alvarez v. City of Chicago*, 605 F.3d 445, 449 n.1 (7th Cir. 2010) (plaintiffs may be similarly situated even if specifics for compensation vary); *Ruffolo v. LaSalle Grp., Inc.*, No. 18 C 3305, 2019 WL 978659, at *5 (N.D. Ill. Feb. 28, 2019) ("[P]laintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay."); *Garza v. Chicago Transit Auth.*, No. 00 C 0438, 2001 WL 503036, at *3 (N.D. Ill. May 8, 2001) ("That the Plaintiffs and other potential plaintiffs may have different jobs … [and] earn

---

[5] According to Defendants, there are three different classes of individuals: (1) individuals who were employed at and worked at Viper mine; (2) individuals who were employed at and worked at the Prairie Eagle mine, and (3) individuals who were employed at and primarily worked at the Viper mine, but who also worked as contract employees at the Prairie Eagle mine. In addition, Defendants note that the declarations provided by Plaintiff demonstrate that the mechanisms for timekeeping differ from mine to mine and according to the miner's actual employer.

different amounts of money … does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay").

Accordingly, whether the discrepancies alleged by Defendants will become important as the case progresses does not affect the question presently before the Court. Here, the potential collective members have the same predominate claim—uncompensated donning and doffing time resulting in unpaid overtime. This is sufficient to meet the "modest factual showing" standard. As the case progresses, should discovery demonstrate "that the putative class is inappropriate, unjustified, or unworkable", Defendants may seek decertification during the second phase. *Gambo*, 2005 WL 3542485, at *5.

### C. Amount of Uncompensated Time

Defendants contend the time allegedly required to don and doff equipment is insignificant or *de minimis.* In support, Defendants point to the evolution of Plaintiff's allegations regarding the amount of unpaid time in issue. In his original Complaint, Plaintiff asserted that the subject donning and doffing period was "approximately ten to fifteen minutes." (Doc. 1, ¶ 28). Defendants filed a motion to dismiss arguing that, pursuant to *Mitchell v. JCG Industries, Inc.*, 745 F.3d 837 (7th Cir. 2014), ten to fifteen minutes is *de minimis.* Thereafter, Plaintiff filed an Amended Complaint, mooting Defendants' motion to dismiss. As to the subject donning and doffing period, the Amended Complaint alleges as follows:

> The amount of time Plaintiff and other similarly situated employees spent performing the unpaid work described above was 15 or more minutes each workday. This resulted in approximately 1 hour and 25 minutes or more of

unpaid overtime for each employees every week and approximately 65 hours or more of unpaid overtime for each employee per year.

(Doc. 33, ¶ 66). In addition, in their declarations, each opt-in plaintiff has alleged that it takes "at least 15-20 minutes or more each workday" to change into and out of the required safety and protective clothing and to obtain and put away tools and equipment. (Doc. 43-1).

Defendants argue that, although the Court must treat the well-pleaded facts as true for the purpose of the parties' pleadings, it need not do so on a motion for conditional certification. According to Defendants, applying the *de minimis* doctrine to Plaintiff's *original* allegation regarding the amount of unpaid time (10-15 minutes), the Court must find that Plaintiff's claims are legally insufficient to establish a claim for compensable time under the FLSA and deny conditional certification. Defendants also contend that further discovery will demonstrate the time in issue is not as alleged. Plaintiffs contend that Defendants' *de minimis* argument is another merits-based argument that should not be resolved at the conditional certification stage.

"The *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute." *Kellar v. Summit Seating Inc.,* 664 F.3d 169, 176 (7th Cir. 2011) (citing *Singh v. City of New York,* 524 F.3d 361, 370 (2nd Cir. 2008)). In *Mitchell*, the Seventh Circuit Court of Appeals considered application of the *de minimis* doctrine to compensation claims under Illinois state law for pre-and post-shift, and pre- and post-meal, donning and doffing at a poultry processing plant. 745 F.3d 837. In finding the time periods at

13

issue not compensable, Judge Posner stated "a few minutes of changing time must be compensated would put [the Court] in the role that the Supreme Court derided - that of playing at being 'time-study professionals.'" *Id.* at 845. Defendants contend that, because the plaintiffs in *Mitchell* claimed the process of donning and doffing safety equipment took 10-15 minutes, given Plaintiff's original claim as to the alleged amount of unpaid time in issue, *Mitchell* establishes that Plaintiff's FLSA claim is legally insufficient. But a closer reading of *Mitchell* suggests that the appellate court did not accept the plaintiffs' claim that the donning and doffing period took 10-15 minutes.

In rendering its decision, the Seventh Circuit noted that, while the Plaintiffs alleged the donning and doffing period took 10-15 minutes, the defendants alleged it took 2-3 minutes. Because of this dispute, the Appellate Court took the unusual step of conducting an "experiment," where court employees were recorded donning and doffing the equipment in issue. In the experiment, it took court employees less than 2 minutes to don and doff the equipment. Judge Posner stated that, while the Court could not rely on the experiment, it could employ "common sense" to conclude that the donning and doffing period in issue was not 10-15 minutes. *Id.* at 842 (explaining that the experiment was not " 'evidence'—the intention was to satisfy curiosity rather than to engage in appellate factfinding—but it is information that confirms the common sense intuition that donning and doffing a few simple pieces of clothing and equipment do not eat up half the lunch break."). Thus, it appears that the Appellate Court's *de minimis* finding relied on the defendants' estimated time period of 2-3 minutes and not the plaintiffs' estimated time period of 10-15 minutes. *See Mitchell, IAS* F.3d at 849-850 (Wood, J., dissent) ("The

14

employer paints a much different picture—one that the majority has decided to credit…The employer estimates that everything can be accomplished in one or two minutes.").[6]

Defendants' argument as to the legal sufficiency of Plaintiff's FLSA claim is also called into question by *Kellar v. Summit Seating Inc., 664 F.3d 169 (7th Cir. 2011)*. In *Kellar*, the Appellate Court found that the amount of overtime work at issue, "both per day and in the aggregate," was substantial at between 10 and 40 minutes each day. *Id.* at 176-77. The Seventh Circuit also noted that the defendant failed to "point to any cases that have found that work exceeding between 10 and 15 minutes in duration is *de minimis*" and stated that most courts have found daily periods of approximately 10 minutes *de minimis*). *Id.* at 177. As such, the Court is not convinced that the Amended Complaint, which alleges the time period in dispute was 15 or more minutes per day, is legally insufficient under the FLSA.[7]

That being said, the Court also finds that Defendant's *de minimis* argument, including the claim that discovery will demonstrate the donning and doffing period was not 15 minutes or more, is premature. Ultimately, whether a donning and doffing period is *de minimis* hinges on the particular facts of the case, and the Court cannot consider and

---

[6] The dissent also disagreed with the with the majority's decision to analyze "each day, or part of a day, separately"--instead of aggregating the amount of time spent each work-week--to find that the amounts of time the employees spent donning and doffing clothes fell below the *de minimis* threshold, because *Sandifer v. United States Steel Corporation*, 134 S.Ct. 870, 880 (2014), asked whether the period at issue can "on the whole, be fairly characterized as time spent in changing clothes or washing." *Mitchell, IAS* F.3d at 851 (Wood, J., dissent)

[7] Nor is the Court convinced that the alleged time period in the original complaint (10-15 minutes) amounts to "evidence" that defeats Plaintiff's FLSA claim.

weigh those facts at this time. *See Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 760-61 (N.D. Ill. 2011) (the court does not resolve arguments regarding the viability or applicability of the *de minimis* doctrine at stage one of the conditional certification analysis, so long as it does not defeat the plaintiff's showing of a factual nexus with members of the putative collective action); *see also Blakes v. Illinois Bell Tel. Co.*, No. 11 CV 336, 2011 WL 2446598, *5 (N.D. Ill. June 15, 2011) (questions of how often each class member worked more than 40 hours per week without payment, why class members did not report compensable time, and whether their supervisors knew they were working off the-clock were not questions to determine at conditional certification stage). As such, this claim is more appropriately addressed at the decertification or summary judgment stage.

In sum, given the minimal burden on Plaintiff at the conditional certification stage, the Court finds that Plaintiff has made a "modest factual showing" to support his allegations of common policies that violate the FLSA such that the court may conclude that collective action is appropriate.

## IV. DISPOSITION

For the above-stated reasons, Plaintiff's Motion for Conditional Certification is **GRANTED**. The Court **CONDITIONALLY CERTIFIES** this case as a collective action under the FLSA and **AUTHORIZES** Plaintiff to send notice, via United States mail and email,[8] under § 216(b) of the FLSA to:

---

[8] As previously noted, Plaintiff has withdrawn his request to send notice via text message. Accordingly, notice shall only be sent via email or United States mail.

**All current and former hourly employees of Defendants engaged in underground mining in Illinois at any time from April 24, 2020, to the present, and worked more than forty (40) hours in at least one workweek**.

The Court further **ORDERS** as follows:

1. The Proposed Notice (Doc. 43-2), including the 60-day opt-in period, is **APPROVED**.

2. Within 14 days of entry of this Order, Defendants shall provide Plaintiff with an electronic spreadsheet in Microsoft Excel or comma-delimited format a roster of all individuals that fit the class definition that includes each individual's full name, date of employment, last known address, and personal email address.

3. Within 14 days of entry of this Order, Defendants shall provide a declaration that the produced roster fully complies with the Court's Order.

4. Plaintiff's request to send duplicate copies of the Notice in the event new, updated, or corrected mailing addresses or email addresses are found for any potential opt-in plaintiff is **APPROVED**.

**SO ORDERED.**

Dated: June 21, 2024

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge