IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **TOBY DYE**, on behalf of himself and others similarly situated, | ) ) ) | Case No. 3:23-cv-1329-DWD |
| | ) | Judge David W. Dugan |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| **KNIGHT HAWK COAL, LLC, et al.**, | ) ) | |
| Defendants. | ) ) | |

**JOINT MOTION FOR FINAL APPROVAL OF
<u>CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT</u>**

Representative Plaintiff Toby Dye ("Representative Plaintiff"), on behalf of himself and the Class Members (as defined in below), and Defendants Knight Hawk Coal, LLC, Knight Hawk Holdings, LLC, and ICG Illinois, LLC ("Defendants") respectfully move this Court to grant final approval of the Class Action Settlement Agreement reached in this case pursuant to Fed. R. Civ. P 23(e) ("Settlement").

Notice of the proposed Settlement has been sent to the Class Members and this Settlement is ripe for final approval. Therefore, the Parties respectfully request that after the Fairness Hearing scheduled for June 24, 2025, the Court enter an Order:

1. Granting final approval of the Parties' Settlement Agreement ("Agreement") and the total settlement amount of $1,218,000.00.

2. Granting final approval of a payment to Class Counsel of $406,000.00 in attorneys' fees (representing one-third of the total settlement amount) as well as Class Counsel's litigation expenses litigation expenses;

3. Granting final approval of a payment to the settlement administrator as provided in the Agreement;

4. Granting final approval of a service award to Representative Plaintiff in the amount of $5,000.00;

5. Granting final approval of service awards to the Discovery Class Opt-ins in the amount of $1,000 each; and,

6. Dismissing this case with prejudice.

| | |
|---|---|
| **NILGES DRAHER LLC** | **SANDBERG PHOENIX & VON GONTARD P.C.** |
| */s/ Shannon M. Draher* | |
| Shannon M. Draher (0074304) | */s/ Bemjamin R. Wesselschmidt (by consent)* |
| 7034 Braucher Street, NW, Suite B | Benjamin R. Wesselschmidt |
| North Canton, Ohio 44720 | A. Courtney Cox |
| Telephone: 330-470-4428 | 600 Washington Ave. – 15th Floor |
| Facsimile: 330-754-1430 | St. Louis, MO 63101 |
| Email: sdraher@ohlaborlaw.com | Telephone: 314-231-3332 |
| | Facsimile: 314-241-7604 |
| *Class Counsel* | Email: ccox@sandbergphoenix.com |
| | bwesselschmidt@sandbergphoenix.com |

**REED, HELLER & CANNELL, LLC**

Edward J. Heller
Richard L. Blake
1100 Walnut St.
PO Box 727
Murphysboro, IL 62966
Telephone: 618-687-2376
Facsimile: 618-684-5554
Email: edheller@rhc.legal
richard@rhc.legal

*Counsel for Defendants Knight Hawk, LLC, Knight Hawk Holdings, LLC, and ICG Illinois, LLC*

## MEMORANDUM IN SUPPORT

## **RELEVANT FACTS**

**I.      Summary of the Action.**

The Parties litigated this case for over a year-and-a half. Representative Plaintiff filed the above captioned action on April 24, 2023 (the "Action"). ECF No. 1. Representative Plaintiff filed an Amended Complaint on July 7, 2023, adding Knight Hawk Holdings, LLC and ICG Illinois, LLC as defendants. ECF No. 33. In the Action, Representative Plaintiff claims that Defendants did not pay its underground coal mining employees for certain pre-shift and post-shift work, such as donning and doffing required safety clothing and other protective equipment. Representative Plaintiff alleges that Defendants' failure to pay for this work resulted in unpaid overtime compensation to him and other similarly situated employees in violation of the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). *Id.* Defendants filed an Answer to the Amended Complaint on August 10, 2023. ECF No. 44.

On August 7, 2023, Representative Plaintiff filed a Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs. ECF No. 43. On September 5, 2023, Defendants filed a Response Opposition to the Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs. ECF No. 49.

On November 3, 2023, the Parties filed a Joint Motion to Stay Pending Mediation, which the Court granted on November 7, 2023. ECF Nos. 52 and 53. The Parties attended a mediation on May 6, 2024, with Michael Geigerman. Draher Decl., at ¶ 11.[1]

After reporting to the Court that the Parties were unable to reach an agreement at the May 6 mediation, the Court lifted the stay and granted Representative Plaintiff's Motion for Conditional

---

[1] Attached as Exhibit 1.

Certification and Court-Authorized Notice. ECF Nos. 57, 59. Following the distribution of Court-authorized notice, the Parties agreed to schedule a second mediation session. ECF No. 68.[2]

The Parties attended a second full day mediation session with Frank Neuner on October 14, 2024. They reached an agreement at the second mediation. Draher Decl., at ¶ 14.

Prior to both mediation sessions, the Parties engaged in formal and informal discovery, which included Defendants' production of certain time and payroll records for a random sample of underground coal miners. Defendant also produced its relevant written policies and handbooks. *Id.* at ¶ 16. Class Counsel retained a PhD level data scientist to analyze the produced wage and hour data and to create a damages model, which was shared with Defendants' Counsel. *Id.* at ¶ 17. Throughout the litigation and during both mediation sessions, the Parties vigorously debated and discussed their respective legal and factual positions. *Id.* at ¶ 18.

II.     **Summary of the Settlement.**

The key terms of the Settlement are as follows:

<u>Total settlement amount.</u> The total settlement amount is $1,218,000.00. The total settlement amount includes: (1) individual settlement payments to the Rule 23 Class Members that become Claimants;[3] (2) service payments to the Representative Plaintiff and the Opt-In Plaintiffs that participated in written discovery (the "Discovery Class Opt-In Plaintiffs"); and (3) Representative Plaintiff's Counsel's attorneys' fees and litigation expenses. The total settlement amount does not include Defendants' share of the payroll taxes for payments made as W-2 wages under the terms of the Agreement or the Settlement Administrator's costs. Defendants are paying those amounts

---

[2] 141 individuals (excluding Representative Plaintiff) have filed consent to join forms in the Action.

[3] Claimants are defined as all Rule 23 Class Members that submit a timely Claim Form. Agreement, at ¶ 8.

in addition to the total settlement amount. Agreement, at ¶ 16.[4] The total settlement amount reflects approximately 8 minutes of unpaid overtime per day for each Class Member during the applicable period.[5] Draher Decl., at ¶ 21.

Individual settlement payments. Each Class Member that becomes a Claimant by returning a timely and valid claim form will receive an individual settlement payment, which is his or her pro rata share of the net settlement amount based on the number of workweeks they worked during the period of April 20, 2020, to October 14, 2024, in comparison to the total number of workweeks worked by all Class Members during the same period.[6] Agreement, at ¶ 26. 260 Class Members became Claimants and will receive an individual settlement payment. *See* Mitchell Decl., at ¶ 13, Exhibit B.

Rule 23 certification. The Parties' stipulated to the certification of the following settlement class: The Representative Plaintiff, the Opt-In Plaintiffs, and all current and former hourly employees of Defendant engaged in underground mining at any time during the period of October 14, 2021, to October 14, 2024, who worked more than 40 hours in at least one workweek during that period. Agreement, at ¶ 21.

Class notice. As discussed below, the Class Members were notified about the settlement in the manner approved and ordered by the Court. The notice included a description of the lawsuit, the relief available, the name and contact information of Class Counsel, the procedure for objecting

---

[4] Attached as Exhibit 2.

[5] The applicable period is April 24, 2020, to October 14, 2024. Agreement, at ¶ 26.

[6] Representative Plaintiff and the Opt-In Plaintiffs are not required to return a Claim Form since they have already joined this case. Agreement, at ¶ 8.

5

to or opting out of the settlement, the Fairness Hearing Date, and the binding effect of the class judgment. Mitchell Decl., at ¶ 8, Exhibit A.[7]

Class Members' opt-out and objection rights. Class Members had the opportunity to opt-out or object to the Settlement. As discussed below, three Class Members requested exclusion, and no Class Members objected. *Id.* at ¶¶ 14,15, Exhibit A.

Release. The Claimants will release all claims that arise from the factual allegations in the Action that arose on or before October 14, 2024. The Class Members that do not become Claimants and that do not opt-out of the Settlement will release their claims under the IMWL that arose on or before October 14, 2024, but they will not release their claims under the FLSA or any other wage and hour claims under applicable law. Agreement, at ¶¶ 60-61.

Service payment and attorneys' fees and litigation expenses. The Settlement provides that Class Counsel will seek an order from the Court approving the following service awards: (1) $5,000.00 to the Representative Plaintiff and (2) $1,000.00 for each of the thirteen Opt-In Plaintiffs that participated in formal discovery (the "Discovery Class Opt-In Plaintiffs"). Last, the Settlement provides that Class Counsel will seek an order from the Court approving (1) the payment of their attorneys' fees not to exceed one-third of the total settlement and (2) their litigation expenses, which as of the date of this Motion are $13,481.63. Agreement, at ¶¶ 34-35; Draher Decl., at ¶ 22.

As discussed below, based on her own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendants is fair and reasonable.

### III. Preliminary approval and dissemination of notice.

On January 9, 2025, the Court entered an Order Granting Preliminary Approval of Class Action Settlement. ECF No. 77. The Court also provisionally certified the settlement class. *Id.*

---

[7] Attached as Exhibit 3.

The Parties engaged Analytics Consulting, LLC as the Settlement Administrator. Mitchell Decl., at ¶ 5. On or around January 24, 2025, the Settlement Administrator received a spreadsheet from Defendants' Counsel containing the names, mailing addresses, social security numbers, and employment dates for Class Members, as well as a spreadsheet from Class Counsel containing the names and mailing addresses for the Opt-In Plaintiffs ("Class Data"). *Id.* at ¶ 6. The Settlement Administrator imported the data to a project-specific database and processed the records through the US Postal Service's National Change of Address (NCOA) database to standardize and update the mailing addresses. *Id.* at ¶ 7.[8]

On February 18, 2025, the Settlement Administrator mailed by first-class mail the Court-approved class notice to the Class Members. The Settlement Administrator also distributed the Court-approved class notice to the Class Members via text message. Moreover, around the same time, Defendants hand-delivered a copy of the Court-approved class notice to Defendants' current employees. A copy of the notice template is attached to the Settlement Administrator's declaration, as Exhibit A. *Id.* at ¶¶ 8, 9, fn. 1.

Four class notices were returned to by the U.S. Postal Service with a forwarding address. The Settlement Administrator updated the class list with the forwarding address and processed a re-mail of the class notice to the updated addresses. *Id.* at ¶ 11. Twenty-one class notices were returned by the U.S. Postal Service without a forwarding address. The Settlement Administrator conducted a skip trace to ascertain a valid address for the affected Class Members. As a result of these efforts, eight new addresses were identified for Class Members. The Settlement

---

[8] After the notices were mailed, the Parties discovered that two individuals were inadvertently left off the Class Data. The Settlement Administrator subsequently mailed the class notice to those two individuals.

Administrator subsequently updated the Class List with the new address and processed a re-mail of the class notice to each of the affected Class Members. *Id.* at ¶ 11.

The class notice gave Class Members until May 19, 2025, to object to or opt out of the settlement and to submit a claim form. The Settlement Administrator received three requests for exclusion from the Settlement, and no class member has filed any objection to the Settlement. *Id.* at ¶¶ 13, 14, Exhibit A.

Defendants also notified the appropriate federal and state officials of the Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

Having completed the notice process, the Parties now move this Court for final approval of the Settlement pursuant to Civ. R. 23(e).

## DISCUSSION

I.   **Rule 23 Certification is appropriate for settlement purposes.**

   A.   <u>Certification of the settlement class under Rule 23(a) and Rule 23(b)(3) is warranted</u>.

Rule 23 certification is appropriate here because the settlement class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Stewart v. Marshall Etc, Inc*, Case No. 14-CV-1002-NJR-PMF, 2015 U.S. Dist. LEXIS 114581, at * 5-9 (S.D. Ill. Aug. 28, 2015) (discussing Rule 23(a) requirements). Certification is also appropriate under Rule 23(b)(3). Rule 23(b)(3) allows for certification "where the requirements of Rule 23(a) have been met, and where the Court finds that 'questions of law or fact common to members of the class predominate over any questions affecting only individual members' and that a' class action is superior to other available methods for resolving the controversy.'" *Id.* at *9 (citing Fed. R. Civ. P. 23(b)(3)).

The settlement class meets the numerosity requirements of Rule 23(a)(1). Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all persons is "impracticable." Fed. R. Civ. P. 23(a)(1). The settlement class includes 576 individuals. As this Court explained, numerosity is typically satisfied when there are more than 40 class members. *See id.* at * 5-6.

The settlement class meets the commonality requirement of Rule 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949-950 (N.D. Ill. 1984)). "Common nuclei of operative fact" are present here because the Representative Plaintiff and the settlement class worked for Defendants, held the same or similar job positions (*i.e.*, underground coal miner), were subject to the same timekeeping and pay policies, and were allegedly not paid for certain pre-shift and post-shift work. *See Stewart*, 2015 U.S. Dist. LEXIS 114581, at * 7.

The settlement class meets the typicality requirement of Rule 23(a)(3). Commonality and typicality are often interrelated because a plaintiff's claim is typical to the class members' claims if it "arises from the same events or practice or course of conduct that gives rise to the claims" of the class members, and the plaintiff's claims are also based on the same legal theory. *Id.* at * 7; *see also Rosario*, 963 F.2d at 1018. As discussed above, the claims asserted in this case present common questions of law and fact.

The adequacy of representation requirement under Rule 23(a)(4) is met. This requirement is two-fold and requires that Class Counsel be adequate, and that Representative Plaintiff be an adequate Class Representative. *See Stewart*, 2015 U.S. Dist. LEXIS 114581, at * 8. Class Counsel has extensive experience in litigating class and collective actions for unpaid overtime. Draher Decl., at ¶ 7. Moreover, Representative Plaintiff's claims are not antagonistic to, or in conflict

with, the proposed settlement class member's claims. *See Stewart*, 2015 U.S. Dist. LEXIS 114581, at * 8.

Finally, the requirements of Rule 23(b)(3) are met. As discussed above, the Representative Plaintiff's claims and the settlement class members' claims arise from the same facts and legal theories. A class action is the superior method to adjudicate these claims, especially considering the proposed settlement class is being certified for settlement purposes. *Id.*

     B.     <u>The class notice satisfies Rule 23 and Due Process</u>.

Pursuant to Rule 23(c)(2)(B), a class action notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified by reasonable efforts. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims; issues or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgement on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The class notice satisfies these requirements. It contained the case name and number, a description of the claims and relief available, the name and contact information for Class Counsel, the procedure for objecting to, opting out of, and joining the settlement, and the binding effect of the class judgment. *See id.; see also Stewart*, 2015 U.S. Dist. LEXIS 114581.

The class notice and the method of dissemination also satisfied due process. Due process is satisfied by sending written notice to the proposed settlement class members by first-class mail at the addresses shown in Defendants' business records. *See, e.g., Hughes v. Merit Lincoln Park LLC*, No. 08-CV-6191, 2011 U.S. Dist. LEXIS 139231, at *8 (N.D. Ill. Dec. 5, 2011) (citing, *Eisen*

10

*v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75, 94 S. Ct. 2140, 2144 (1974) ("First class mail will generally satisfy Rule 23(c)(2)'s requirement of 'the best notice practicable under the circumstances.'")). In this case, class notice was sent to the Class Members by first-class mail and by text message using the addresses and telephone numbers shown in Defendants' records. Mitchell Decl., at ¶¶ 8,9. Furthermore, notice was hand-delivered to those Class Members still employed by Defendants. *Id.* at ¶¶ 8, 9, fn. 1. Accordingly, the class notice satisfied Rule 23 and due process requirements.

## II. The Settlement is "fair, reasonable, and adequate" and should be approved.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement should be approved because the Settlement is "fair, reasonable, and adequate," and represents a favorable outcome for the Class Members when judged against the possible outcome weighed against the risks, expenses, and uncertainty of continued litigation. *Armstrong v. Bd. Of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felen v. Cal. Pub. Employees' Ret. Sys.*, 134 F.3d 873 (7th Cir. 1998). The Seventh Circuit has identified several factors that courts should considering in deciding whether to grant final approval of a proposed class action settlement. Those factors include: (1) the relative strength of the plaintiff's case on the merits weighed against the value of the settlement achieved; (2) the complexity, length, and expense of continued litigation; (3) the presence of collusion in achieving the settlement; (4) the stage of the proceedings and amount of discovery completed; (5) the opinion of competent counsel; and (6) the amount of opposition expressed by those affected by the settlement. *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).

An analysis of the relevant factors (some of which are combined for discussion below), demonstrates why the Settlement should be approved.

    A.    <u>The settlement amount is substantially balanced against the strength of the asserted claims and the attendant risks and uncertainties of continued litigation.</u>

This first and second factors listed above weigh in favor of approval of the Settlement. Defendants agreed to a total settlement amount of $1,218,000.00 to settle the wage and hour claims of the Class Members. This amount represents approximately 8 minutes of unpaid overtime per day for each Class Member, which was recently approved by this Court as a fair, reasonable, and adequate settlement in a similar case involving underground coal miners. Draher Decl., at ¶¶ 20, 21.

As numerous courts have noted, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitudes of other problems associated with them." *Brent v. Midland Funding*, LLC No. 3:11-CV-1332, 2011 U.S. Dist. LEXIS 98763, at * 43 (N.D. Ohio Sept. 1, 2011) (citations omitted). Thus, in most cases, "unless the settlement is clearly inadequate, its acceptance and approval are preferrable to lengthy and expensive litigation with uncertain results." *Id.* (citations omitted).

Although the Parties believe in the strength of their respective claims and defenses, they fully appreciate the risk in litigating those claims and defenses to a judgment. As an initial matter, had the Parties not settled the Action, they would have spent considerable time on class certification discovery and briefing. If Representative Plaintiff were successful in obtaining class certification, the Parties would have then spent significant time conducting merits and expert discovery and engaging in substantial motion practice. *See* Draher Decl., at ¶ 28.

Defendants likely would have argued that some, if not all, of the alleged unpaid pre-shift and post-shift work at issue was not compensable. Had Defendants prevailed on that argument, the

value of the Class Members' claims would be diminished or possibly completely negated. Thus, the Settlement, which provides settlement payments to the Class Members, guarantees a good result to the Class Members when balanced against the risks and uncertainties of continued litigation. *Id*. at ¶¶ 27, 28.

> B. <u>The Settlement was achieved after discovery and arm's length good faith negotiations, which were facilitated by a mediator. Counsel opine that the Settlement is fair, reasonable, and adequate.</u>

The third, fourth, and fifth factors listed above also weigh in favor of approval of the Settlement. "Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, Case No. 97 C 7694, 2001 U.S Dist. LEXIS 1568856, at * 7 (N.D. Ill. Dec. 10, 2001). Here, the Parties and their Counsel, who have significant experience litigating wage and hour collective and class action cases, negotiated at arm's length and in good faith over two mediation sessions with private third-party neutrals. These negotiations took place after both informal and formal discovery. The discovery was analyzed by the Parties' Counsel and by Class Counsel's expert and served as a basis for the Parties' respective damages and risk analysis. Throughout the course of the settlement negotiations, the Parties vigorously debated the strength of the claims and defenses. Draher Decl., at ¶¶ 16-18. Given the risks and uncertainties of continued litigation, as well as the result achieved for the Class Members, the Parties' Counsel represent that is their opinion that the Settlement is fair, reasonable, and adequate.

> C. <u>There is no opposition by the Class Members.</u>

Finally, the sixth factor listed above weighs in favor of approval of the Settlement. No Class Member has objected to this Settlement. Mitchell Decl., at ¶ 11.

> D. <u>The proposed attorneys' fee award is fair and reasonable</u>.

13

The Agreement provides for a standard one-third share of the total settlement amount to be paid as attorneys' fees to Class Counsel, as well as their litigation expenses. Class Counsel hereby submits and Defendants do not object that the requested fee is fair and reasonable because Representative Plaintiff signed a retainer agreement providing for a one-third contingency fee payment. Draher Decl., at ¶ 30. In addition, as discussed below, Class Counsel has almost always been awarded a one-third fee in wage and hour class and collective actions. *Id.* at ¶ 22.

A one-third contingency fee arrangement is a common arrangement for wage and hour class and collective actions. *See Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2017 U.S. Dist. LEXIS 73816, at *9; 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016). For this reason, courts routinely approve one-third fee awards in wage and hour class and collective action settlements. *See id.*, at * 11 (citing cases). Awarding one-third fee recognizes the "significant risk[] of nonpayment that [Representative] Plaintiff's Counsel faced." *Id.* at #12 (citing cases).

Awarding one-third from the total settlement recognizes the vital role that contingency fee arrangements play in making legal counsel available to individuals who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a regular, recurring basis, employment counsel who take cases on contingency cases often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered.  This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989)

("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest.").

The inability of plaintiffs to afford hourly fees is especially common in the employment context, where many workers are low wage earners and cannot pay several hundred dollars per hour for legal representation. Contingency fee arrangements make it possible for plaintiffs' firms to "serve the public interest" by taking on class actions that deter wage law violations by employers. *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 178–79 (D. Mass. 2006) (Lasker, J.) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). "Allowing private attorneys to prosecute such actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims." *Skirchak*, 432 F. Supp. 2d at 179.

Class Counsel submits and Defendants do not object that the requested fee award of one-third is reasonable. Class Counsel has historically received fee awards of one-third of the total settlement value in both state and federal courts, including in this Court. Draher Decl., at ¶ 22. A few examples of cases where Class Counsel was granted a one-third fee in a wage and hour class / collective action are listed below.

- *McLaughlin v. Botting Group, LLC*, Case No. 2017 CV 12094 (Tuscarawas County, Ohio Court of Common Pleas) (awarded a one-third fee in $5,935,000.00 settlement);
- *Roberts v. Railworks*, Case No. 50-2016-CA-002028 (Circuit Court of the Fifteenth Circuit for Palm Beach County, Florida) (awarded a one-third fee in $4,950,000.00 settlement);

15

- *Langston v. U.S. Security Associates*, Case No. 5:18-cv-00868 (W.D. Okla.) (awarded a one-third fee in $4,250,000.00 settlement);

- *Raiser v. Menard, Inc.*, Case No. 3:18-cv-00314 (N.D. Ohio) (awarded a one-third fee in $4,000,000.00 settlement);

- *Fullerton v. Golden Flake Snack Foods, Inc.*, Case No. 3:17-cv-00296 (N.D. Fla) (awarded a one-third fee in $1,750,000.00 settlement);

- *Jurden v. Utz Quality Foods, Inc.*, Case No. 1:15-cv-02196 (M.D. Pa.) (awarded a one-third fee in $2,500,000.00 settlement); and

*Bradley v. Menard, Inc.*, Case No. 2:17-cv-00165 (S.D. Ind.) (awarded a one-third fee in $1,500,000.00 settlement).

In addition, this Court approved a one-third fee in a similar class action settlement handled by Class Counsel's Firm last year. *See Kizeart*, 2024 U.S. Dist. LEXIS 134724, at * 5. Similarly, Judge Schneider in the Northern District of Illinois approved a one-third fee in a class action settlement handled by Class Counsel last year. *See Turnham v. Nationwide Inbound, Inc.*, Case No. 3:23-cv-50014, ECF No. 45.

Based on these considerations, Class Counsel submits and Defendants do not object that a one-third fee award is fair and reasonable and should therefore be approved. In addition, Class Counsel's request for reimbursement of their litigation expenses should also be approved. Class Counsel's litigation expenses to date are $13,481,63. Class Counsel will incur additional expenses traveling to Illinois for the Fairness Hearing. Draher Decl., at ¶ 22.

E. <u>The proposed service award to Representative Plaintiff and the Discovery Class Opt-In Plaintiffs is fair and reasonable</u>.

The Agreement provides for a service award to Representative Plaintiff in the amount of $5,000.00 and $1,000.00 to each the Discovery Class Opt-In Plaintiffs." Agreement, at ¶

35. Courts widely recognize that service award payments serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. "Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Furman v. At Home Stores, LLC*, No. 1:16-CV-08190, 2017 U.S. Dist. LEXIS 73816, at *5 (N.D. Ill, May 1, 2017); *Koszyk*, 2016 WL 5109196, at *2; 2016 U.S. Dist. LEXIS 126893, at *4 (N.D. Ill. Sept. 16, 2016), citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it necessary to induce an individual to participate in the suit.").

Representative Plaintiff's proposed service award is intended to compensate him for his effort and the risk associated with his role in initiating this lawsuit that has resulted in substantial recovery for the Class Members. Representative Plaintiff contributed significant time and effort in the Action, which enabled his Counsel to evaluate the strength of the asserted claims, and reach a settlement of this matter that, in Class Counsel's opinion, fairly and adequately compensates the Class Members for alleged unpaid wages. Specifically, Representative Plaintiff provided information required to conduct an initial investigation of the claims alleged in the Action. He reviewed the initial pleadings in the case for factual accuracy and participated in written discovery. He also consulted with his Counsel throughout the litigation and the two mediation sessions regarding issues. Draher Decl., at ¶ 29. As such, the time and effort that Representative Plaintiff provided supports the requested service payment.

Likewise, the proposed service awards for the Discovery Class Opt-In Plaintiffs are intended to compensate them for the substantial time that they spent working with their Counsel

and responding to written discovery. Their efforts also helped Class Counsel evaluate the strength of the asserted claims. *Id.* at ¶ 29.

## **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that this Court enter the Proposed Order, which will be submitted to the Court via email:

1. Granting final approval of the Parties' Settlement Agreement ("Agreement") and the total settlement amount of $1,218,000.00.

2. Granting final approval of a payment to Class Counsel of $406,000.00 in attorney's fees (representing one-third (1/3) of the total settlement amount) as well as their litigation expenses;

3. Granting final approval of a payment to the settlement administrator as provided in the Agreement;

4. Granting final approval of a service award to Representative Plaintiff in the amount of $5,000.00;

5. Granting final approval of service awards to the Discovery Class Opt-in Plaintiffs in the amount of $1,000.00 each; and,

6. Dismissing this case with prejudice.

Respectfully submitted,

| | |
|---|---|
| **NILGES DRAHER LLC** | **SANDBERG PHOENIX & VON GONTARD P.C.** |
| | |
| */s/ Shannon M. Draher* | */s/ Benjamin R. Wesselschmidt (by consent)* |
| Shannon M. Draher (0074304) | Benjamin R. Wesselschmidt |
| 7034 Braucher Street, NW, Suite B | A. Courtney Cox |
| North Canton, Ohio 44720 | 600 Washington Ave. – 15th Floor |
| Telephone: 330-470-4428 | St. Louis, MO 63101 |
| Facsimile: 330-754-1430 | Telephone: 314-231-3332 |
| Email: sdraher@ohlaborlaw.com | Facsimile: 314-241-7604 |
| | Email: ccox@sandbergphoenix.com |
| *Class Counsel* | bwesselschmidt@sandbergphoenix.com |

**REED, HELLER & CANNELL, LLC**

Edward J. Heller
Richard L. Blake
1100 Walnut St.
PO Box 727
Murphysboro, IL 62966
Telephone: 618-687-2376
Facsimile: 618-684-5554
Email: edheller@rhc.legal
richard@rhc.legal

*Counsel for Defendants Knight Hawk, LLC, Knight Hawk Holdings, LLC, and ICG Illinois, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2025, the foregoing was filed electronically. Notice of this filing will be sent to the following individuals by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Shannon M. Draher
*Class Counsel*